FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 APR 26  PM 1 01

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| KATHY SEELEY,<br><br>Plaintiff,<br><br>v.<br><br>ST. ANTHONY'S CATHOLIC CHURCH, DIOCESE OF CHEYENNE, DEACON DONALD STEWART, FATHER MICHAEL CARR, FATHER KEVIN KOCH, FATHER LUCAS SIMANGO, BISHOP DAVID RICKEN, and BISHOP HUBERT HART,<br><br>Defendants. | Case No. 12–CV–15–ABJ |

## OPINION AND ORDER GRANTING DIOCESAN DEFENDANTS AND ST. ANTHONY'S DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Kathy Seeley sued Deacon Donald Stewart after he allegedly leveraged his position as a member of the clergy to sexually abuse her. She also sued St. Anthony's Catholic Church, the Diocese of Cheyenne, and officials within those organizations for vicarious liability and negligent training and supervision. These Church Defendants have now filed motions for summary judgment on all of Ms. Seeley's claims. The Court concludes that they are entitled to summary judgment and therefore **GRANTS** their motions.

**FACTS**

In 1991, Donald Stewart became interested in becoming a Deacon for the Roman Catholic Diocese of Cheyenne. He discussed his interest with Bishop Hubert Hart, the Bishop of the Diocese, and ultimately applied to a deacon training program. As part of his application, Mr. Stewart submitted various materials including letters of recommendation and a report from a psychological evaluation. Nothing in Mr. Stewart's materials raised any red flags so Bishop Hart accepted Mr. Stewart into the deacon training program. During his training, no one ever expressed any concerns about Mr. Stewart to Bishop Hart.

In 1996, Mr. Stewart finished his training. Bishop Hart then ordained him as a Deacon and assigned him to St. Anthony's Catholic Church in Casper, a parish within the Diocese of Cheyenne. Bishop Hart retired in 2001, but during the entire time he knew Deacon Stewart no one ever expressed any concerns to him about Deacon Stewart, much less concerns about sexual abuse or improprieties.

A few years after Deacon Stewart was ordained, two members of Kathy Seeley's family tragically died. She turned to St. Anthony's to help her cope with the loss. In 2001 or 2002, she met with Father Michael Carr, the pastor at St. Anthony's, who referred her to Deacon Stewart for bereavement counseling. Ms. Seeley and Deacon Stewart remained friends over the next several years. In January 2007, their relationship became sexual even though Deacon Stewart was married to another woman at the time.

Although their sexual relationship was consensual, Ms. Seeley now feels that Deacon Stewart is a sexual perpetrator who "groomed" her for sex from the very start of their

relationship, and that this grooming process culminated in his sexually abusing her starting in January 2007. And in June 2007, Ms. Seeley met with Father Carr intending to tell him about this sexual abuse. However, during their meeting, Ms. Seeley could not bring herself to tell Father Carr about the relationship with Deacon Stewart. For his part, Father Carr has testified that he was never aware of any sexual relationship between Ms. Seeley and Deacon Stewart. He also has testified that no one ever expressed any concerns to him or St. Anthony's about Deacon Stewart, much less concerns about sexual abuse.

Despite feeling sexually abused by Deacon Stewart, Ms. Seeley stayed in the relationship until it completely unraveled in January 2008 when Deacon Stewart allegedly battered Ms. Seeley while the two were in California together. They took separate flights back to Wyoming and Ms. Seeley has not seen or spoken to Deacon Stewart since.

Several years later, Ms. Seeley sued Deacon Stewart for negligent infliction of emotional distress (NIED) and intentional infliction of emotional distress (IIED). Her complaint also brought suit against St. Anthony's, the Diocese, Bishop Hart, Bishop David Ricken, Father Carr, Father Kevin Koch, and Father Lucas Simango (collectively, "Church Defendants"). Bishop Ricken took over as Bishop for the Diocese after Bishop Hart retired in 2001, and he served as Bishop until 2008. Father Carr was the pastor of St. Anthony's from 1998 to June 2007. He was succeeded by Father Koch, who served as St. Anthony's pastor from June 2007 until he resigned in 2011. Father Lucas served as an associate pastor at St. Anthony's from 2006 to 2008, and he took over as pastor in 2011 after Father Koch resigned. Ms. Seeley brought NIED and IIED claims against the Church Defendants as well. She also alleged that the Church Defendants

negligently hired, trained, supervised, and retained Deacon Stewart and that they are vicariously liable for Deacon Stewart's sexual abuse of her.

The Church Defendants recently filed motions for summary judgment on all of Ms. Seeley's claims. They argue that Ms. Seeley is not within the class of persons who can bring an NIED claim and that she has no facts to support her IIED claim against them. Regarding Ms. Seeley's negligence claims, the Church Defendants argue that Ms. Seeley must show that they knew or should have known about Deacon Stewart's propensity for sexual abuse, and that Ms. Seeley has no facts to support that element of her claims. Finally, they argue that Ms. Seeley's vicarious liability claim fails because Deacon Stewart was not acting within the scope of his employment when he allegedly sexually abused Ms. Seeley.

Ms. Seeley makes a number of concessions in response. She concedes that the Church Defendants are entitled to summary judgment on her NIED and IIED claims. She also concedes her claims for negligent hiring and negligent retention. However, she maintains her claims for vicarious liability and negligent training and supervision.

The Court first will discuss the standard of review for the Church Defendants' summary judgment motions before turning to a discussion of Ms. Seeley's claims for vicarious liability and negligent training and supervision. A brief conclusion follows.

**STANDARD OF REVIEW**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is *genuine* if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is *material* if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving

party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing a summary judgment motion, the nonmovant cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255. And ultimately a district court may grant a summary judgment motion only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

### I. Vicarious Liability

Ms. Seeley argues that the Church Defendants are vicariously liable for Deacon Stewart's sexual abuse of her under the respondeat superior doctrine. The Court disagrees. Deacon Stewart was not acting within the scope of his employment when he allegedly sexually abused Ms. Seeley. The Church Defendants thus cannot be held vicariously liable for that conduct.

The Church Defendants can be held vicariously liable for Deacon Stewart's sexual abuse of Ms. Seeley only if that conduct was within the scope of his employment. The Wyoming

Supreme Court has held that an employer can be liable for the negligent acts of an employee acting within the scope of employment. *Worman v. BP Am. Prod. Co.*, 248 P.3d 644, 649 (Wyo. 2011). It also has held that an employer can be liable for the intentional tort of an employee if the employee is acting within the scope of employment. *Sage Club v. Hunt*, 638 P.2d 161, 162 (Wyo. 1981). But an employee's conduct is within the scope of employment only if it (1) is the type of conduct the employee was hired to perform, (2) occurs within the authorized time and space limits, and (3) is intended, at least in part, to serve the employer. *Worman*, 248 P.3d at 649.

Here, Deacon Stewart's alleged sexual abuse of Ms. Seeley did not fall within the scope of his employment. Sexually abusing parishioners is not the type of conduct Deacon Stewart was hired to perform; it was not part of his job description. And Ms. Seeley admits as much. When asked whether Deacon Stewart's conduct was outside the scope of what the Church Defendants expected of him, she answered, "Most definitely." Seeley Dep. 232:8–10. Further, nothing in the record indicates that Deacon Stewart's conduct was motivated by anything other than a desire to satisfy his own sexual impulses. Thus, Deacon Stewart's sexual abuse of Ms. Seeley was outside the scope of his employment and the Church Defendants can't be held vicariously liable for that conduct.

The Court's conclusion is consistent with the conclusion of virtually every court that has addressed this issue. Those courts have held that, as a matter of law, a clergy member acts outside the scope of his employment when he sexually abuses a parishioner.[1] The Fifth Circuit,

---

[1] *See, e.g., Wilson v. Diocese of New York of the Episcopal Church*, No. 96 Civ. 2400(JGK), 1998 WL 82921, at *5 (E.D.N.Y. Feb. 26, 1998) ("[A]cts of sexual misconduct by priests . . . are outside the scope of the priests' employment and are clearly not in furtherance of the [employer's] business."); *Kennedy v. Roman Catholic Diocese*

for example, has stated that "[i]t would be hard to imagine a more difficult argument than that [the defendant's] illicit sexual pursuits were somehow related to his duties as a priest or that they in any way furthered the interests of [the church], his employer." *Tichenor v. Roman Catholic Church of the Archdiocese of New Orleans*, 32 F.3d 953, 960 (5th Cir. 1994). This Court agrees with that sentiment. It's hard to imagine a case where one could argue with a straight face that a clergy member acted within the scope of his employment by sexually abusing a parishioner. Suffice it to say, the Court does not believe this is such a case. The Church Defendants are entitled to summary judgment on Ms. Seeley's vicarious liability claim.

## II.    Ms. Seeley's Negligent Training and Supervision Claims

Ms. Seeley also argues that the Church Defendants are directly liable to her for negligently training and supervising Deacon Stewart. Both of Ms. Seeley's negligence claims require a showing that the Church Defendants knew or should have known of Deacon Stewart's propensity for sexual abuse. But Ms. Seeley has no evidence to support such a showing. Thus, the Court is constrained to conclude that the Church Defendants are entitled to summary judgment on her negligence claims as well.

---

*of Burlington, Vt., Inc.*, 921 F. Supp. 231, 233 (D. Vt. 1996) ("[N]o reasonable jury could conclude that [the priest's] sexual misconduct was either within the scope of his employment or in furtherance of the Diocese's business."); *Alpharetta First United Methodist Church v. Stewart*, 472 S.E.2d 532, 536 (Ga. Ct. App. 1996) (concluding that sexual misconduct by minister was outside scope of employment); *Paul J.H. v. Lum*, 736 N.Y.S.2d 561, 562 (N.Y. App. Div. 2002) (holding that sexual abuse by priest was not within scope of employment, and thus neither church nor church officials could be held vicariously liable); *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 654 N.Y.S.2d 791, 793 (N.Y. App. Div. 1997) (concluding that sexual abuse by priest did not fall within scope of priest's employment, and thus diocese was not vicariously liable for his conduct); *DiPietro v. Lighthouse Ministries*, 825 N.E.2d 630, 634 (Ohio Ct. App. 2005) (concluding that sexual misconduct by pastor was not within scope of employment); *N.H. v. Presbyterian Church (U.S.A)*, 998 P.2d 592, 599 (Okla. 1999) ("[T]he majority of jurisdictions considering the issue of sexual contact between an ecclesiastical officer and a parishioner have held that the act is outside the scope of employment as a matter of law.").

In *Glover*, this Court stated that one element of a negligent training claim is the employer knew or should have known about a specific problem requiring a specific training addressed to that problem. *See Glover v. TransCor Am., Inc.*, 57 F. Supp. 2d 1240, 1245 (D. Wyo. 1999). And recently, in *Shafer v. TNT Well Service, Inc.*, the Wyoming Supreme Court adopted section 317 of the Restatement (Second) of Torts, which provides a cause of action for negligent supervision of an employee acting outside the scope of employment. 285 P.3d 958, 966–967 (Wyo. 2012). One element of a negligent supervision claim under section 317 is that the employer knew or should have known of the employee's propensity for the conduct that caused the injury before the injury occurred. *See* Restatement (Second) of Torts § 317(b)(ii) (1965); *see also Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (stating that a negligent supervision claim requires the plaintiff to show "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence" (internal quotation marks omitted)); *N.H. v. Presbyterian Church (U.S.A)*, 998 P.2d 592, 600 (Okla. 1999) ("The critical element for recovery is the employer's prior knowledge of the servant's propensities to create the specific danger resulting in damage."); *Paul J.H. v. Lum*, 736 N.Y.S.2d 561, 562–63 (N.Y. App. Div. 2002) (stating that employer's knowledge of employee's propensity to cause harm is a necessary element of negligent supervision claim). For purposes of this case then, a necessary element for both of Ms. Seeley's negligence claims is that the Church Defendants knew or should have known about Deacon Stewart's propensity for sexual abuse. But Ms. Seeley has no evidence to support that element of her claims so those claims necessarily fail and the Church Defendants are entitled to summary judgment.

For their part, the Church Defendants have produced evidence that they never had any knowledge of Deacon Stewart's propensity for sexual abuse. Ms. Seeley admits she never notified them or anyone else about Deacon Stewart's sexual abuse. Seeley Dep. 165:13–166:7, 253:24–254:6. Bishop Hart and Bishop Ricken both testified that no one ever expressed any concerns to them about Deacon Stewart, much less concerns about sexual abuse. *See* Hart Aff. ¶¶ 12–13, ECF No. 75-2; Ricken Aff. ¶ 4, ECF No. 75-4. Ms. Seeley admits she never told Father Carr about her relationship with Deacon Stewart. Seeley Dep. 256:2–257:21. And Father Carr testified that no one ever expressed any concerns or made any allegations of sexual improprieties against Deacon Stewart to him or St. Anthony's. Carr Dep. 12:5–10. He also testified that he had no knowledge of Ms. Seeley's sexual relationship with Deacon Stewart. *Id.* at 13:9–16, 21:13–21. Father Koch similarly testified that he was not aware of any concerns about Deacon Stewart, much less concerns about sexual improprieties. Koch Dep. 8:6–9. Father Lucas also testified that he was never aware of any sexually inappropriate conduct by Deacon Stewart and was not aware of Deacon Stewart's relationship with Ms. Seeley. Lucas Dep. 6:7–11, 9:10–20. Father Lucas also testified that no one ever expressed any concerns to him about Deacon Stewart. *Id.* at 11:11–16.

Ms. Seeley has nothing to rebut this evidence. She tries to establish that while Deacon Stewart was working for a Hospice center in Casper he had improper sexual relationships with Hospice clients or employees that the Church Defendants knew about. But Ms. Seeley has no evidence to support that. Both of Deacon Stewart's supervisors at Hospice, Marilyn Connor and Tera Gillett, testified that they were unaware of any sexual relationships between Deacon

Stewart and clients or employees at Hospice. Ms. Connor testified that she was not aware of any such sexual relationships. *See* Connor Dep. 12:11–16, 22:3–5. She also testified that she never received any complaints about sexual impropriety by Deacon Stewart. *Id.* at 20:24–21:2, 22:25–23:7. Ms. Connor further testified that she never even spoke with the Church Defendants about Deacon Stewart. *Id.* at 21:15–17, 24:3–12. Deacon Stewart's other supervisor at Hospice, Tera Gillett, similarly testified that she had no knowledge of any sexual relationships between Deacon Stewart and clients or employees at Hospice. Gillett Dep. 8:2–10. She also testified that she never even spoke with the Church Defendants about Deacon Stewart. *Id.* at 12:24–25:16.

In short, the Church Defendants have produced evidence demonstrating that they neither knew nor should have known about Deacon Stewart's propensity for sexual abuse and Ms. Seeley has produced nothing to the contrary. Her claims for negligent training and supervision thus fail because she has no evidence to support that necessary element of her claims.

Ms. Seeley's negligent supervision claim has a further problem: She has no evidence that Deacon Stewart's alleged acts of sexual abuse took place on the Church Defendants' property or involved the Church Defendants' chattel. Under section 317, an employer has a duty to supervise an employee acting outside the scope of employment only if the employee is on the employer's premises or using the employer's chattel. *Shafer v. TNT Well Serv., Inc.*, 285 P.3d 958, 966 (Wyo. 2012); Restatement (Second) of Torts § 317(a)(i)–(ii) (1965). Here, Ms. Seeley can't point to any facts showing Deacon Stewart's acts of sexual abuse took place on the Church Defendants' property or involved the Church Defendants' chattel. Ms. Seeley's negligent supervision claim thus fails for that reason as well. *Cf. Ehrens v. Lutheran Church*, 385 F.3d 232,

235–36 (2d Cir. 2004) (concluding that the plaintiff's negligent supervision claim against pastor failed because incidents of sexual assault did not occur on church property).

## CONCLUSION

The Church Defendants are entitled to summary judgment on Ms. Seeley's vicarious liability claim because Deacon Stewart's alleged sexual abuse of Ms. Seeley was not within the scope of his employment. The Church Defendants are also entitled to summary judgment on Ms. Seeley's negligent training and supervision claims because Ms. Seeley has no evidence that the Church Defendants knew or should have known about Deacon Stewart's propensity for sexual abuse. Her negligent supervision claim fails for the additional reason that she has no evidence showing Deacon Stewart's alleged acts of sexual abuse took place on the Church Defendants' property or involved the Church Defendants' chattel. Thus, the Church Defendants are entitled to summary judgment on all of Ms. Seeley's claims and the Court **GRANTS** their summary judgment motions (ECF Nos. 74, 78).

Dated this 26th day of April, 2013.

Alan B. Johnson
United States District Judge