FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2013 APR 26  PM 1 01

STEPHAN HARRIS, CLERK
CHEYENNE

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| KATHY SEELEY,<br><br>Plaintiff,<br><br>v.<br><br>ST. ANTHONY'S CATHOLIC CHURCH, DIOCESE OF CHEYENNE, DEACON DONALD STEWART, FATHER MICHAEL CARR, FATHER KEVIN KOCH, FATHER LUCAS SIMANGO, BISHOP DAVID RICKEN, and BISHOP HUBERT HART,<br><br>Defendants. | Case No. 12–CV–15–ABJ |

## OPINION AND ORDER GRANTING DEFENDANT DEACON DONALD STEWART'S MOTION FOR SUMMARY JUDGMENT

Kathy Seeley brought suit against Deacon Donald Stewart for intentional infliction of emotional distress, alleging that he leveraged his position as a member of the clergy to sexually abuse her. Deacon Stewart has now filed a motion for summary judgment arguing that Ms. Seeley's claim is time-barred under the statute of limitations. The Court agrees that Ms. Seeley's claim is untimely and therefore **GRANTS** Deacon Stewart's motion.

## FACTS

Kathy Seeley turned to St. Anthony's Catholic Church in Casper to help her cope with the tragic loss of two family members. In 2001 or 2002, she began meeting with Deacon Donald Stewart for bereavement counseling and they remained friends over the next several years. Their relationship ultimately became sexual in January 2007, although Deacon Stewart was married to another woman at the time.

Although the sexual relationship was consensual, Ms. Seeley feels Deacon Stewart is a sexual perpetrator who "groomed" her for sex from the very start of their relationship and that this grooming process culminated in sexual abuse beginning in January 2007. On June 21, 2007, Ms. Seeley met with Father Michael Carr, a pastor at St. Anthony's, intending to tell him about this sexual abuse by Deacon Stewart. She says that she arranged the meeting because she "needed help," "was really afraid," and that Father Carr could see how "upset" she was during the meeting. Seeley Dep. Ex. 4 at 11–12. She also asserts that she spoke with Father Carr about "the emotional distress caused" by her relationship with Deacon Stewart. Seeley Dep. Ex. 11 ¶¶ 2, 3. However, despite these feelings of sexual abuse, Ms. Seeley stayed in the relationship until it completely unraveled in January 2008 when Deacon Stewart allegedly battered Ms. Seeley while they were in California together. They took separate flights back to Wyoming and Ms. Seeley has not seen or spoken to Deacon Stewart since.

On January 17, 2012, Ms. Seeley filed suit against Deacon Stewart for negligent infliction of emotional distress (NIED) and intentional infliction of emotional distress (IIED). Deacon Stewart has now filed a motion for summary judgment arguing, among other things, that

- 2 -

the four-year statute of limitations started running on Ms. Seeley's claims, at the latest, when she met with Father Carr to discuss her emotional distress. Thus, according to Deacon Stewart, the limitations period expired on June 21, 2011, and Ms. Seeley's claims are time-barred because she didn't file her complaint until several months later on January 17, 2012. Ms. Seeley concedes that Deacon Stewart is entitled to summary judgment on her NIED claim, but she argues that the limitations period didn't start running on the IIED claim until after she separated from Deacon Stewart in January 2008. Ms. Seeley contends that only then could she look back and realize the extent of the emotional harm Deacon Stewart had inflicted on her.

The Court first will discuss the standard of review for Deacon Stewart's motion before turning to the critical question here: When did the statute of limitations start running on Ms. Seeley's IIED claim?

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is *genuine* if a reasonable juror could resolve the dispute in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is *material* if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing a summary judgment motion, the nonmovant cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the

- 4 -

province of the fact-finder, not the district court. *Id.* at 255. Ultimately, a district court may grant a summary judgment motion only if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## DISCUSSION

The dispositive issue here is whether the statute of limitations started running on Ms. Seeley's IIED claim when she spoke with Father Carr about her emotional distress or later, after she and Deacon Stewart broke up. Because the record demonstrates Ms. Seeley was aware of her emotional distress when she met with Father Carr, the Court concludes that the four-year limitations period started running in June 2007, expired in June 2011, and that her claim is thus time-barred because she didn't file it until January 2012.

Both this Court and the Wyoming Supreme Court have held that a four-year limitations period applies to IIED claims under Wyoming law. *Gustafson v. Bridger Coal Co.*, 834 F. Supp. 352, 358 & n.4 (D. Wyo. 1993); *VanLente v. Univ. of Wyo. Research Corp.*, 975 P.2d 594, 598 (Wyo. 1999) (approving the district court's application of a four-year limitations period to an IIED claim under Wyo. Stat. Ann. § 1-3-105). However, the Wyoming Supreme Court has never directly addressed when the limitations period for an IIED claim starts running. But by putting Wyoming case law and statutory law together, this Court believes the answer to that question becomes clear.

In *VanLente*, the Wyoming Supreme Court held that IIED claims are governed by Wyo. Stat. Ann. § 1-3-105(a)(iv)(C). *See VanLente*, 975 P.2d at 598. That provision states that the

limitations period starts running when the "cause of action accrues." Wyo. Stat. Ann. § 1-3-105(a) (2011). And the Wyoming Supreme Court has held that a cause of action accrues when (1) forces wrongfully put in motion produce an injury and (2) the plaintiff knows or reasonable should know of the injury giving rise to the claim. *See Duke v. Housen*, 589 P.2d 334, 343 (Wyo. 1979); *see also Amoco Prod. Co. v. EM Nominee P'ship Co.*, 2 P.3d 534, 542 (Wyo. 2000) (adopting the discovery rule); *Black's Law Dictionary* 533 (9th ed. 2009) (defining the discovery rule to mean the "limitations period does not begin to run until the plaintiff discovers (or reasonably should have discovered) the injury giving rise to the claim"). Thus, reading this case law and § 1-3-105(a)(iv)(C) together yields the conclusion that the limitations period for an IIED claim starts running when the defendant's conduct causes the plaintiff to experience emotional distress and the plaintiff knows or reasonably should know of that distress.

Here, the record demonstrates that Ms. Seeley was aware of the emotional distress caused by Deacon Stewart's alleged sexual abuse by June 21, 2007. She met with Father Carr on that day to tell him Deacon Stewart was sexually abusing her. Seeley Dep. Ex. 4 at 5, 11–12. She asserts she met with Father Carr because she "needed help," "was really afraid," and that Father Carr could see how "upset" she was during their meeting. *Id.* at 11–12; *see* Seeley Dep. 223:2–3. Even more damaging to Ms. Seeley's cause is her assertion that she "spoke with Vicar General Father Carr *about the emotional distress caused*" by Deacon Stewart's abuse. Seeley Dep. Ex. 11 ¶¶ 2, 3 (emphasis added). Ms. Seeley's own assertions establish that, at least by June 21, 2007, she was aware of the emotional distress caused by Deacon Stewart's sexual abuse. The four-year limitations period for her IIED claim thus started running on that date and expired on June 21,

2011. But because Ms. Seeley didn't file her complaint until January 17, 2012, several months after the deadline had passed, her IIED claim is time-barred and Deacon Stewart is entitled to summary judgment.

## CONCLUSION

The four-year limitations period on Ms. Seeley's claim for intentional infliction of emotional distress started running on June 21, 2007. However, because Ms. Seeley didn't file her complaint until January 2012, several months after the limitations period had run, her claim is time-barred and Deacon Stewart is entitled to summary judgment. The Court therefore **GRANTS** Deacon Stewart's motion (ECF No. 83).

Dated this _____ day of April, 2013.

Alan B. Johnson
United States District Judge

- 7 -